# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | Case No. 2:19CR00013-001 |
| v.  ) | **OPINION AND ORDER** |
| ) | |
| **TYLAN LUCAS,**  ) | By: James P. Jones |
| ) | United States District Judge |
| Defendant.  ) | |

*Debbie H. Stevens*, Special Assistant United States Attorney, Abingdon, Virginia, for United States; *Nancy C. Dickenson-Vicars*, Assistant Federal Public Defender, Abingdon, Virginia, and *Randy V. Cargill*, Assistant Federal Public Defender, Roanoke, Virginia, for Defendant.

The defendant, Tylan Lucas, awaiting sentencing, objects to his characterization in the Presentence Investigation Report (PSR) as a Career Offender under § 4B1.1 of the U.S. Sentencing Commission Guidelines Manual (Nov. 2018) (USSG). The objection has been briefed and is ripe for decision.

I.

Lucas was an inmate at a federal prison located in this judicial district. On March 31, 2019, his codefendant, Shauntae Crummer, while visiting Lucas at the prison, surreptitiously passed narcotics to him, but was observed by prison personnel, and the drugs were later recovered from Lucas' stool. Lucas pleaded guilty to all counts of the Indictment arising from this event.

> A Career Offender is defined in the guidelines as follows:
>
> (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

USSG § 4B1.1(a). Lucas has a prior federal drug trafficking conviction and a prior state (Nebraska) felony assault conviction. He does not object to the use of the drug conviction as a predicate or the timeliness of either conviction.[1] His sole objection is that the Nebraska conviction was not of a crime of violence.

> A "crime of violence" is defined in the guidelines as follows:
>
> The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that--
>
> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>
> (2) is murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use or unlawful possession of a firearm described in 26 U.S.C. § 5845(a) or explosive material as defined in 18 U.S.C. § 841(c).

USSG § 4B1.2(a).

The parties contest whether the Nebraska felony of which Lucas was convicted falls within the force clause of § 4B1.2(a)(1), using the categorical

---

[1] *See* USSG §§ 4B1.2 cmt. n.3, 4A1.2(e) (providing for time periods for predicate convictions).

approach, which "takes into account only the definition of the offense and the fact of conviction." *United States v. Pierce*, 278 F.3d 282, 286 (4th Cir. 2002). The parties agree that the statute of his conviction, Neb. Rev. Stat. § 28-308, provides that "[a] person commits the offense of assault in the first degree if he or she intentionally or knowingly causes serious bodily injury to another person."

The defendant argues that under the Nebraska Supreme Court's construction of section 28-308, there is no requirement that the accused intended to cause serious bodily injury; only that he or she intentionally or knowingly caused the act that produced the serious bodily injury. For example, in *State v. Leibhart*, 662 N.W.2d 618 (Neb. 2003), the accused was charged with first-degree assault under section 28-308 after a child under her care exhibited shaken baby syndrome. The court upheld the sufficiency of the circumstantial evidence of guilt, noting that "the required intent in the present case was an intent to shake Emily, not necessarily an intent to cause the specific brain injury that resulted from her shaking." *Id.* at 630. In other words, "[w]hen one deliberately does an act which proximately causes and directly produces a result which the criminal law is designed to prevent, the actor is legally and criminally responsible for all the natural or necessary consequences of the unlawful act, although a particular result of the act was not intended or desired." *Id.* at 629–30.

Because of this lack of specific intent to cause serious bodily injury, the defendant contends that the Nebraska statute omits any requirement of proof of physical force by the perpetrator, and thus does not comply with the force clause. This argument finds support in the recent Fourth Circuit opinion in *United States v. Battle*, 927 F.3d 160 (4th Cir. 2019).[2]  There the question was whether a Maryland conviction for assault with intent to murder was a predicate violent felony. Reviewing prior precedent, including in particular *United States v. Castleman,* 572 U.S. 157 (2014), and its own *United States v. Middleton,* 883 F.3d 485 (4th Cir 2018), the court of appeals held that the "requisite mens rea is crucial in the force analysis." 927 F.3d at 166.  Thus, in upholding the Maryland conviction as a valid predicate, even in the face of an argument that it could be committed without involving the use of physical force, the court relied on the state crime's specific intent to cause bodily injury.  "Following *Castleman*, it is impossible to intend to cause injury or death without physical force as contemplated under the ACCA." *Id.* at 167.  The court excluded cases like *Middleton,* however, "where a crime does not have as an element the intentional causation of death or injury." *Id.*at 166.

---

[2] While *Battle* involved the force clause of the Armed Career Criminal Act, precedents involving the similarly worded sentencing guideline are applicable.  *United States v. King*, 673 F.3d 274, 279 n.3 (4th Cir. 2012).

The exception noted in *Battle* is present here. The Nebraska statute does not require an intent to cause serious bodily injury. Moreover, it does not expressly require the use of physical force, meaning "*violent* force — that is, force capable of causing physical pain or injury to another person." *Johnson v. United States*, 559 U.S. 133, 140 (2010). Accordingly, the Nebraska statute of which Lucas was convicted cannot be a predicate under the force clause of § 4B1.2(a)(1).

The government also contends that the conviction under the Nebraska statute is a predicate based on the enumerated offense clause of §4B1.2(a)(2), in that it is an "aggravated assault." However, for the reasons previously stated, that argument is rejected. *See United States v. Rosales-Hernandez*, 334 F. App'x 814 (9th Cir. 2009) (unpublished).

II.

Another issue in this case, unrelated to the defendant's Career Offender objection, requires resolution.

The defendant initially pleaded guilty without a plea agreement to Counts 2 and 8 of the Indictment at a hearing on January 3, 2020. Thereafter, he entered into a written Plea Agreement to the remaining Counts 1, 3, and 9. On January 7, 2020, he entered into an Addendum providing that all of the terms of the Plea Agreement would apply to Counts 2 and 8. A second change-of-plea hearing was held on January 7. The Covid-19 pandemic delayed the sentencing, and on July 10, 2020,

the defendant file a pro se motion seeking to withdraw his guilty pleas. Mot., ECF 133. Thereafter, he made clear, both in writing and at a motion hearing, that he did not wish to withdraw his guilty plea as to any of the charges, but that instead he wished to withdraw from his Plea Agreement on the ground that it contained a waiver of appeal. At the motion hearing, he explained that the reason for his position was that the waiver of appeal would prevent him from being able in the future to collaterally attack the Nebraska first-degree assault conviction. He stated that he realized that he could not attack that conviction in the current sentencing proceeding, *see* USSG § 4A1.2 cmt. n.6, but that the appeal waiver would preclude him from ever seeking to attack the Nebraska conviction in the courts of Nebraska. I was unsuccessful in my attempt to dissuade him from that view of the construction of the waiver of appeal provision, as was, presumably, his attorneys.[3]

In any event, the defendant is not entitled to withdraw from his Plea Agreement and the government is not entitled to assert any of its remedies for a violation of the Plea Agreement by the defendant. The defendant has made clear that he is not attempting to withdraw his guilty plea; nor does he even contend that he has a right to appeal in this case. Nothing he has done so far adversely affects

---

[3] The assault conviction involved the allegations that the victim gave the defendant a ride and when the defendant pulled a gun, the victim exited the vehicle, and the defendant shot the victim as he was walking away. PSR ¶ 48, ECF No. 132. The defendant has filed a copy of a writing purportedly from the alleged victim recanting his prior testimony. Mot. Ex. A, ECF 133-1.

his obligations under the Plea Agreement. If he wants to continue to believe the mistaken view that he can't ever attack his conviction in Nebraska because of the appeal waiver in his Plea Agreement, he may, but that doesn't affect his obligations in that document to the government.

### III.

For the reasons stated, the defendant's objection to his classification as a Career Offender is SUSTAINED. The Probation Officer shall prepare an Addendum to the Presentence Investigation Report recalculating the defendant's guideline scoring based on the court's ruling. The Clerk shall reschedule the defendant's sentencing hearing.

It is so **ORDERED**.

ENTER: August 6, 2020

/s/  JAMES P. JONES
United States District Judge